**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) MARCUS ALLEN RANDALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-cv-00153-GKF-JFJ |
| | ) | |
| | ) | ATTORNEY LIEN CLAIMED |
| (1) PAWNEE COUNTY SHERIFF, in his official | ) | JURY TRIAL DEMANDED |
| capacity, | ) | |
| (2) MARTY WILSON, in his individual capacity, | ) | |
| (3) MIKE WATERS, in his individual capacity, | ) | |
| and | ) | |
| (4) CLINT STOUT, in his individual capacity, | ) | |
| (5) CITY OF CLEVELAND, OKLAHOMA | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

COMES NOW, the Plaintiff, Marcus Allen Randall, and for his Complaint against

Defendants, alleges and states as follows:

**PARTIES**

1.      Plaintiff Marcus Allen Randall ("Plaintiff", "Mr. Randall" or "Randall") is an

individual and a resident of Oklahoma.

2.      Defendant Pawnee County Sheriff is the Sheriff of Pawnee County, Oklahoma,

residing in Pawnee County, Oklahoma and acting under color of state law. The Sheriff is sued

purely in his official capacity. It is well-established, as a matter of Tenth Circuit authority, that a §

1983 claim against a county sheriff in his official capacity "is the same as bringing a suit against the

county." *Martinez v. Beggs,* 563 F.3d 1082, 1091 (10th Cir. 2009). *See also Porro v. Barnes,* 624 F.3d

1322, 1328 (10th Cir. 2010). *See also Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("[A]n official-

capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Thus,

in suing the Sheriff in his official capacity, Plaintiff has brought suit against Pawnee County/PCSO.

3.     Defendant Marty Wilson ("Agent Wilson") is a resident of the State of Oklahoma. Agent Wilson was, at all times relevant hereto, acting under color of state law, and in the scope of his employment, as an agent employed by the Oklahoma State Bureau of Investigation.

4.     Defendant Mike Waters is the former Pawnee County Sheriff. Former Sheriff Waters, was, at all times pertinent hereto, acting under color of state law, and in the scope of his employment.

5.     Defendant Clint Stout ("Chief Stout") is a resident of the State of Oklahoma. Chief Stout was, at all times relevant hereto, acting under color of state law, and in the scope of his employment, as Chief of Police for the City of Cleveland, Oklahoma.

6.     Defendant City of Cleveland, Oklahoma, is a municipal entity under the laws of Oklahoma.

## JURISDICTION AND VENUE

7.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C § 1343 to secure protection of and to redress deprivations of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under the color of law.

8.     This Court also has original jurisdiction under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourth Amendment and/or the Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

9.     The acts complained of herein occurred in Pawnee County, Oklahoma. Jurisdiction and venue are thus proper under 28 U.S.C. §§ 116(a) and 1391(b).

## FACTUAL BACKGROUND

10.     Paragraphs 1 to 9 are incorporated herein by reference.

11.     At all pertinent times, Mr. Randall was employed as Pawnee County Emergency Management Director and Assistant Fire Chief for the Peninsula Fire Department.

12.     In his capacity as Pawnee County Emergency Management Director, Mr. Randall wore a uniform and carried a badge.

13.     In his capacity as Assistant Fire Chief for the Peninsula Fire Department, Mr. Randall wore a uniform and carried a badge.

14.     In carrying out his duties as Pawnee County Emergency Management Director and Assistant Fire Chief for the Peninsula Fire Department, Mr. Randall has never worn a law enforcement uniform of any law enforcement agency.

15.     In carrying out his duties as Pawnee County Emergency Management Director and Assistant Fire Chief for the Peninsula Fire Department, Mr. Randall has never worn or brandished a law enforcement badge from any law enforcement agency.

16.     In carrying out his duties as Pawnee County Emergency Management Director and Assistant Fire Chief for the Peninsula Fire Department, Mr. Randall drove a white Chevrolet "Tahoe" vehicle equipped with emergency lights.

17.     As a first responder / Emergency Management Director / Assistant Fire Chief  was legally permitted to drive a white "Tahoe" vehicle equipped with emergency lights.

18.     Mr. Randall does openly carry a firearm as is his legal right under Oklahoma law.

19.     In carrying out his duties as Pawnee County Emergency Management Director and Assistant Fire Chief for the Peninsula Fire Department, Mr. Randall is often called upon to respond to calls for assistance, including 911 calls.

20.     Mr. Randall previously campaigned against Former Sheriff Waters in his political quest to become sheriff. Because of this, Former Sheriff Waters held a personal grudge and vendetta against Mr. Randall.

21.     On information and belief, Former Sheriff Waters and Agent Wilson attended high school together and have remained personal friends.

22.     Both Former Sheriff Waters and Chief Stout encouraged Agent Wilson to investigate Mr. Randall -- and initiate a prosecution of Mr. Randall -- for the crime of impersonating a law enforcement officer, both knowing that Mr. Randall had committed no crime.

23.     In helping to launch the investigation, Former Sheriff Waters was acting a final policy maker for the Pawnee County Sheriff's Office.

24.     On November 20, 2018, Mr. Randall was charged criminally with Impersonating a Public Officer by Uniform or Vehicle and Arresting Without Probable Cause. The charges stem from citizen interactions Mr. Randall had in his capacity as Pawnee County Emergency Management Director and/or Assistant Fire Chief for the Peninsula Fire Department.

25.     The charges against Mr. Randall were void of probable cause.

26.     The charges against Mr. Randall were based on a probable cause affidavit, authored, signed and sworn to by Agent Wilson, that omitted important exculpatory facts. These omitted exculpatory facts, include, but are not limited to: (A) at no time during any of the events described in the Affidavit was Mr. Randall wearing a law enforcement agency uniform; (B) at no time during any of the events described in the Affidavit was Mr. Randall wearing or brandishing a law enforcement agency badge; (C) in his capacity as Assistant Fire Chief for the Peninsula Fire

4

Department, and as part of his lawful duties, Mr. Randall wore a uniform; (D) in his capacity as Pawnee County Emergency Management Director, and as part of his lawful duties, Mr. Randall wore a uniform; (E) in his capacity as Assistant Fire Chief for the Peninsula Fire Department, and as part of his lawful duties, Mr. Randall wore a badge; (F) in his capacity as Pawnee County Emergency Management Director, and as part of his lawful duties, Mr. Randall wore a badge; (G) as a first responder / Emergency Management Director / Assistant Fire Chief, Mr. Randall was legally permitted to drive a white "Tahoe" vehicle equipped with emergency lights; (H) as a first responder / Emergency Management Director / Assistant Fire Chief, Mr. Randall was required to respond to calls for assistance, including 911 calls; and (H) Mr. Randall violated no law by open carrying a firearm.

27.     The criminal case against Mr. Randall was prosecuted all the way through trial.

28.     On April 14, 2021, after a trial on the merits, a jury entered a verdict of not guilty and Mr. Randall was acquitted.

29.      Nevertheless, as a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including, but not limited to, economic and personal losses (including lost wages, loss of employment, lost business opportunities and attorney fees), irreparable damage to his reputation, humiliation, emotional distress, pain and suffering, and the damages alleged herein.

## CLAIMS FOR RELIEF

### Malicious Prosecution in Violation of the Fourth and/or Fourteenth Amendment to the United States Constitution (Pursuant to 42 U.S.C. § 1983)

30.     Paragraphs 1-29 are incorporated herein by reference.

31.     By executing -- and swearing to -- the Probable Cause Affidavit, Agent Wilson initiated "legal process", or "brought about" the criminal action, against Plaintiff.

32.     By executing -- and swearing to -- the Probable Cause Affidavit, and later testifying against Plaintiff, Agent Wilson facilitated Plaintiff's continued prosecution.

33.     The criminal proceeding against Plaintiff was terminated in Plaintiff's favor, in the form of a full acquittal after a trial on the merits.

34.      There was no probable cause to support the seizure of Plaintiff or his continuing prosecution.

35.     In a case such as this, involving information omitted from an affidavit, the existence of probable cause is determined by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant.

36.     As discussed *supra*, Agent Wilson omitted numerous exculpatory facts from the Probable Cause Affidavit. And, if those omitted facts had been included in the Affidavit, there would plainly be no probable cause.

37.     Additionally, Agent Wilson knowingly or recklessly omitted information from the Affidavit which, if included, would have vitiated probable cause.

38.     As a direct and proximate result of this malicious prosecution, Plaintiff suffered damages, including, but not limited to, economic and personal losses (including lost wages, loss of employment, lost business opportunities and attorney fees), irreparable damage to his reputation, humiliation, emotional distress, pain and suffering, and the damages alleged herein.

## Civil Rights Conspiracy

39.     Paragraphs 1-38 are incorporated herein by reference.

40.      "Allegations of conspiracy may ... form the basis of a § 1983 claim." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1988).

41.     As alleged above, Mr. Randall was subjected to a malicious prosecution, in violation of his Fourth and/or Fourteenth Amendment rights.

42.     In addition, on information and belief, Former Sheriff Waters and Chief Stout conspired with Agent Wilson to violate Mr. Randall's Constitutional rights.

43.     Specifically,  Former Sheriff Waters, Chief Stout and Agent Wilson knew that Mr. Randall had committed no crime and that there was no probable cause to arrest Mr. Randall.

44.     Nonetheless, based on political and personal animus held by Former Sheriff Waters, Former Sheriff Waters and Chief Stout conspired with Agent Wilson to initiate and continue a malicious prosecution against Mr. Randall as described above.

45.     As a direct and proximate result of this conspiracy, Plaintiff suffered damages, including, but not limited to, economic and personal losses (including lost wages, loss of employment, lost business opportunities and attorney fees), irreparable damage to his reputation, humiliation, emotional distress, pain and suffering, and the damages alleged herein.

## Municipal Liability

46.     Paragraphs 1-44 are incorporated herein by reference.

47.     At all pertinent times, Former Sheriff Waters was acting a final policy maker for PCSO such that his acts and omissions are fairly attributable to the County.

48.     At all pertinent times, Chief Stout was acting a final policy maker for the Cleveland Police Department such that his acts and omissions are fairly attributable to the City of Cleveland.

49.     As a direct and proximate result of Former Sheriff Water and Chief Stout's unlawful conduct, as described herein, Plaintiff suffered damages, including, but not limited to, economic and personal losses (including lost wages, loss of employment, lost business opportunities and attorney fees), irreparable damage to his reputation, humiliation, emotional distress, pain and suffering, and the damages alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiff prays this Court grant him the relief sought, including but not limited to actual, compensatory and punitive damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing suit, the costs of bringing this action, a reasonable attorneys' fee, along with such other relief as is deemed just and equitable.

Respectfully submitted,

/s/Daniel E. Smolen
Daniel E. Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Smolen & Roytman
701 S. Cincinnati Ave.
Tulsa, Oklahoma 74119
P: (918) 585-2667
F: (918) 585-2669

***Attorneys for Plaintiff***